IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK JAMES NETHERCUTT, | No. 2:21-CV-1678-MCE-DMC |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

   Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the Court are the parties' briefs on the merits, ECF Nos. 10 and 12.

   The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

1

v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Court recommends the Commissioner's final decision be affirmed.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

| | |
|---|---|
| Step 1 | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |
| Step 4 | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |

        Step 5        If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied.

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## II. THE COMMISSIONER'S FINDINGS

Plaintiff previously applied for social security benefits on August 23, 2013. See CAR 22.[1] An unfavorable decision was issued on March 11, 2016, and that decision thereafter became administratively final. See id. Plaintiff filed the application giving rise to the current appeal on April 10, 2018. See id. at 125. Plaintiff alleges disability starting January 1, 2017. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on April 7, 2020, before Administrative Law Judge (ALJ) Sara A. Gillis. There was, however, a malfunction with the recording device and the matter was not recorded. See id. at 144. Nonetheless, the ALJ issued an unfavorable decision on April 24, 2020, and Plaintiff appealed to the Appeals Council. See CAR 144. In a November 10, 2020, order, the Appeals Council remanded the matter back to the ALJ for further proceedings. See id. 144-46.

A second hearing on the subsequent application was held on March 9, 2021, before the same ALJ. See id. at 21. In a March 30, 2021, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): degenerative disc disease of the cervical and lumbar spine; and obesity;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: full range of medium work;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant is capable of performing past relevant work as a mechanic and auto detailer.

See id. at 25-36.

After the Appeals Council declined further review on July 27, 2021, this appeal followed.

///

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on March 18, 2022, ECF No. 7.

4

## III.  DISCUSSION

In his opening brief, Plaintiff argues the case should be remanded for the following reasons: (1) the ALJ erred in finding that Plaintiff could perform his past relevant work; (2) the ALJ failed to include in the residual functional capacity assessment limitations found to be credible or explain why such limitations were not included; and (3) the ALJ failed to provide any evidentiary basis for the finding that Plaintiff can perform the full range of medium work. Plaintiff further contends that the appointment of Andrew Saul and members of the Appeals Council violated the separation of powers, rendering the entire decision in this case constitutionally defective.

### A.  Residual Functional Capacity Assessment

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").  Thus, residual functional capacity describes a person's exertional capabilities in light of his or her limitations.[2]  An ALJ's RFC finding must include all of the limitations the ALJ has found to be supported by the evidence of record. See SSR 85-15.

Plaintiff raises two interrelated arguments concerning the ALJ's residual functional capacity assessment.  First, Plaintiff contends the ALJ failed to include limitations which were found to be supported by the record.  Second, and more generally, Plaintiff asserts that the finding that Plaintiff can perform the full range of medium work lacks evidentiary

---

[2]  Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

support. Plaintiff's first argument focuses on limitations related to mental impairments; his second on limitations related to physical impairments.

### 1. Mental Impairments

In determining residual functional capacity, the ALJ must assess what the plaintiff can still do in light of both physical and mental limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Where there is a colorable claim of mental impairment, the regulations require the ALJ to follow a special procedure, the Psychiatric Review Technique (PRT). See 20 C.F.R. §§ 404.1520a(a), 416.920a(a). In doing so the ALJ is required to record pertinent findings and rate the degree of functional loss. See 20 C.F.R. §§ 404.1520a(b), 416.920a(b).

Plaintiff argues:

> In this case, the ALJ completed the PRT analysis and found that Plaintiff's medically determinable impairments of depressive disorder and cognitive disorder would cause mild limitations in all four areas of mental functioning: understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself (Tr. 28). This fact is beyond any possible dispute.
>
> * * *
>
> Despite the foregoing, the ALJ here included precisely **zero** mental functional limitations in her RFC (Tr. 29). In fact, the ALJ found that Mr. Nethercutt could perform "a full range of medium work" (Tr. 29). Yet in completing the PRT the ALJ herself had previously explicitly found that Plaintiff had mild limitations in understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing himself (Tr. 28). Thus, the ALJ's RFC finding was facially defective because it failed to in any way account for Plaintiff's admitted mental functional limitations (Tr. 28, 29).

ECF No. 10, pgs. 16-17.

Plaintiff adds:

> Lest the Agency misstate the specific legal issue, Plaintiff will make it clear. This issue has nothing to do with how the ALJ weighed the medical evidence or what medical opinions and other facts were considered. Rather, the issue is solely whether it was legal error for the ALJ to omit Plaintiff's proven mental functional limitations from the RFC

6

finding without explanation.

Id. at 17, n.3.

As Plaintiff acknowledges, the ALJ completed the psychiatric review technique (PRT) analysis required under the regulations at Step 2. See CAR 27-28. The ALJ concluded that Plaintiff has mild limitations in each of the four areas. See id. Based on the PRT findings as well as evidence indicating no more than minimal impact on Plaintiff's ability to work due to mental limitations, the ALJ correctly concluded at Step 2 that Plaintiff's mental impairments are not-severe. See id. Notably, Plaintiff does not challenge this finding. Instead, Plaintiff argues that the ALJ was required to account for mild mental limitations at Step 4 in formulating Plaintiff's residual functional capacity, or explain why she was not doing so.

The Court does not agree. See Woods v. Kijakazi, 32 F.4th 785, 788 (9th Cir. 2022). In Woods, the Ninth Circuit upheld the ALJ's determination that the plaintiff had non-severe mental impairments based on application of the PRT at Step 2 revealing only mild limitations. The ALJ in Woods, as here, included no mental limitations in determining the plaintiff's residual functional capacity at Step 4. Ultimately, the appellate court affirmed the ALJ's denial of benefits. The current case presents the same situation.

With respect to mental limitations, the regulations provide additional guidance. Under 20 C.F.R. § 404.1520a(d), the claimant's mental residual functional capacity is only assessed in light of mental impairments found to be severe. Specially, the rule provides: "If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity."[3] Here, as in Woods, the ALJ did not err by failing to discuss at Step 4 limitations related to mental impairments found non-severe at Step 2.

/ / /

/ / /

/ / /

---

[3] Plaintiff does not raise any argument related to the ALJ's analysis of the Listings of Impairments at Step 2.

    2. <u>Physical Impairments</u>

According to Plaintiff:

> The ALJ once again provided no evidentiary basis for her finding that Mr. Nethercutt could perform a full range of medium work, despite his severe cervical and lumbar impairments. The ALJ violated the Appeals Council by failing to obtain additional evidence related to both the physical and mental impairments of record. The ALJ substituted her lay judgment for the opinions of all of the medical professionals of record. The ALJ failed to consider the consistency of the mental health professional opinions of record. Each of these errors standing alone would merit remand for further proceedings in this case; taken in combination, these errors absolutely require such a remand.

ECF No. 10, pg. 26.

In making this argument, Plaintiff challenges the ALJ's analysis of the medical opinion evidence, specifically the opinion of Dr. Dipsia. Plaintiff contends:

> . . .[T]he ALJ found the opinion of Dr. Dipsia "persuasive, as he found the claimant had medium work ability, with additional limitations" (Tr. 34). The ALJ found that Dr. Dipsia's opinion was "supported by the medical evidence of record," as well as the treatment history and activities of record (Tr. 34). However, the ALJ did not adopt or reject the additional limitations" offered by Dr. Dipsia (Tr. 29).
> The ALJ found that Mr. Nethercutt could perform a full range of medium work (Tr. 29). In contrast, Dr. Dipsia opined that Mr. Nethercutt could perform medium work with frequent, but not constant, climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 115-16). The ALJ rejected the opinion of Dr. Cepeda that Mr. Nethercutt could lift only 25 pounds, modified medium work according to the ALJ, but she did not adopt or reject the postural limitations offered by Dr. Dipsia (Tr. 34).

ECF No. 10, pg. 23.

Plaintiff's argument is unpersuasive. As Plaintiff acknowledges, Dr. Dipsia concluded that Plaintiff could perform work with frequent – but not constant – balancing, stooping, kneeling, crouching, and crawling. As Defendant observes, Plaintiff's past relevant work as an auto mechanic involves no more than frequent postural movements. <u>See</u> ECF No. 12, pg. 15 (citing Dictionary of Occupational Titles, 620.261-010 (requiring either occasional or frequent postural movements). In finding that Plaintiff can perform his past relevant work, the ALJ necessarily included a limitation to no more than frequent (i.e., never constant) postural activities, thereby accepting all of Dr. Dipsia's opinion which provides evidentiary support for the ALJ's determination at Step 4.

8

B. **Vocational Finding**

At Step 5 of the sequential analysis, the Medical-Vocational Guidelines (Grids) provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only.[4]  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sulliacvan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities. See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically,

---

[4] Exertional capabilities are defined in footnote 2 above. Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

At Step 5, the ALJ accepted testimony from a vocational expert and found that Plaintiff has the residual functional capacity to perform his past relevant work. See CAR 35. The ALJ found:

> The claimant has past relevant work as an auto mechanic (DOT 620.261-010, medium exertion, SVP7), and an auto detailer (DOT 915.687-034, medium exertion, SVP3). The claimant performed the above jobs within the past 15 years at substantial gainful activity levels long enough to learn the required job skills. The vocational expert, Ronald Hatakeyama specifically stated that he did not consider the claimant's auto washing/detailing as a composite job or a secondary job, even though the claimant performed auto detailing as well as auto mechanic work. Mr. Hatakeyama also testified that that claimant did not have transferable skills to light or sedentary work, as it related to the auto mechanic job (hearing testimony 03/09/2021). As required by SSR 82-62, this work was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period (Ex. B2E, Ex. B7D, and hearing testimony 03/09/2021). In comparing the claimant's current residual functional capacity with the physical demands of this work, the Administrative Law Judge finds that the claimant was able to perform the above work as generally performed. Based on the foregoing, the claimant remains capable of performing his past relevant work, as generally performed. In reaching this conclusion, the Administrative Law Judge relied on the objective evidence and vocational expert assessments, which were in accordance with SSR 00-4P. The claimant provided a detailed description of his past relevant work activity, which allowed the vocational expert to provide an assessment of the claimant's work ability, in accordance with the DOT. Based on the description of the above jobs,

as stated in the Dictionary of Occupational Titles, and the expert vocational assessment, the Administrative Law Judge concluded that the claimant maintains the ability to perform past relevant work activity.

CAR 35.

Plaintiff challenges the ALJ's conclusion that Plaintiff's past relevant work was not a composite job. According to Plaintiff:

> The ALJ cited vocational expert testimony as the basis for her finding that Mr. Nethercutt's past job was not a composite job (Tr. 35). However, this was based on both a misstatement of the vocational expert's testimony and a mischaracterization of Mr. Nethercutt's testimony.
> First, the ALJ stated that vocational expert Ronald Hatakeyama "specifically stated that he did not consider the claimant's auto washing/detailing as a composite job" (Tr. 35). This is absolutely false. Vocational Expert Hatakeyama never used the word "composite" and never testified whether Mr. Nethercutt's past job was a composite job (Tr. 65-66).
> Instead, Mr. Hatakeyama stated "I've identified one job. It's classified as auto mechanic. . . I know the claimant testified earlier that he also washed cars after the cars were done. I'm not going to consider that a secondary job" (Tr. 65). This testimony was based on a mis-characterization of Mr. Nethercutt's actual testimony.
> Mr. Nethercutt testified that he performed work as an auto mechanic and as an auto detailer every day (Tr. 47). How much time he spent on either job "depended on, you know, the workflow" (Tr. 47). At no point did Mr. Nethercutt testify that his work as an auto detailer was insignificant or transitory, such that it was not a consistent required element of his employment.
> Mr. Nethercutt had only one prior occupation – auto mechanic (Tr. 326, 332). One significant element of this occupation was "washing cars, getting them ready to – for the customer" (Tr. 46). Another significant element of this occupation was "general mechanic, all aspects of it" (Tr. 46). These are two separate jobs performed by one employee in one occupation. This is the very definition of a composite job.
> According to the ALJ's own decision, auto mechanic and auto detailer are generally two separate occupations (Tr. 35). The ALJ acknowledged that auto mechanic is identified by the Dictionary of Occupational Titles (DOT) code 620.261-010. This occupation is skilled, with a specific vocational preparation (SVP) rating of 7 (Tr. 35). DOT § 620.261-010. Pursuant to the DOT, an auto mechanic "Repairs and overhauls automobiles, buses, trucks, and other automotive vehicles." Id. In contrast, auto detailer is identified by the DOT code 915.687-034 (Tr. 35). This occupation is semi-skilled, with an SVP rating of 3 (Tr. 35). DOT § 915.687-034. Pursuant to the DOT, an auto detailer "Cleans and refurbishes new and used automobiles." Id. These are two separate occupations, yet Mr. Nethercutt performed both of them as significant elements of his past job.
> Mr. Nethercutt worked one job (Tr. 326, 332). This job required him to perform the essential duties of auto mechanic AND auto detailer (Tr. 47). Accordingly, his only past job was a composite job and as such, generally a finding of non-disability was prohibited. Because the ALJ

> made no alternate as actually finding and no alternative step five finding, remand is required in this case.

ECF No. 10, pgs. 13-15.

Plaintiff's argument is unpersuasive. Pursuant to Social Security Ruling 82-62, "The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands, and nonexertional demands of such work." See also Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (claimant's own description of his past work is "highly probative" of the job's demands). As Defendant notes, Plaintiff's testimony does not indicate that his past relevant work was a composite job:

> At the 2021 hearing, Plaintiff never testified that his duties were split 50/50 between detailing and mechanic tasks. It was the opposite: Plaintiff testified that he performed both duties "depend[ing] on . . . the workflow" as the new dealership was gaining customers; he agreed that during his employment, the dealership hired other people "just to do the detailing" (AR 47). Plaintiff testified that he worked at this job for five or six years, which the ALJ indicated ended in 2017 per Plaintiff's earning record (AR 46, 318-19). During the time that Plaintiff was responsible for cleaning vehicles, he "basically wash[ed] cars, getting them ready . . . for the customer" (AR 46).

ECF No. 12, pg. 11.

The vocational expert was entitled to rely on this testimony to conclude that Plaintiff's past relevant work was not a composite job. See Matthews, 10 F.3d at 681  Moreover, where, as here, there may be more than one rational interpretation of the evidence, ALJ's interpretation must be upheld. See Shaibi v. Berryhill, 883 F.3d 1102, 1108 (9th Cir. 2018).

    **C.**    **Validity of Administrative Process**

Plaintiff raises two related arguments concerning to the validity of the administrative process. First, Plaintiff argues: "The appointment of Andrew Saul as a single commissioner of SSA who was removable only for cause and would serve a longer term than that of the President violated separation of powers." ECF No. 10, pg. 27. According to Plaintiff, "the decision in this case, by an ALJ who derived her authority from Mr. Saul, is constitutionally defective." Id. Second, Plaintiff asserts: "The ALJ and Appeals Council judges had no legal

authority to adjudicate this case because they were not properly appointed [under the Federal Vacancies Reform Act]." Id. at 29.

### 1. Separation of Powers

In Kaufmann v. Kijakazi, the Ninth Circuit concluded that the removal provision set forth in 42 U.S.C § 902(a)(3) violates separation of powers principles and must be severed from the remainder of the statute. See 32 F.4th 843, 846 (9th Cir. 2022); see also Smith Winston v. Comm'r of Soc. Sec., 2022 WL 2533918, at 9 (E.D. Cal. 2022). The appellate court also held that, absent a showing of actual harm to the plaintiff caused by the removal provision, the plaintiff lacks standing to raise the issue and the Commissioner's decision remains valid. See Kaufman, 32 F.4th at 846 (affirming Commissioner's final decision). The court in Kaufman noted two examples of actual harm – "if the President would have removed the agency's head but for the provision or, alternatively, if the agency's head 'might have altered his behavior in a way that would have benefited' the party." Id. at 849 (quoting Collins v. Yellen, 141 S.Ct. 1761, 1798 (2021)).

Here, as in Kaufman, Plaintiff "has presented neither evidence nor a plausible theory to show that the removal provision caused her any harm." Id. at 849-50; see also Collins, 141 S.Ct. 15 1802 (Kagan, J., concurring in part) (opining that "I doubt the mass of [Social Security Administration] decisions – which would not concern the President at all – would need to be undone" because "[w]hen an agency decision would not capture a President's attention, his removal authority could not make a difference"); Ramos v. Comm'r, 2022 WL 105108, at *3-4 (E.D. Cal. Jan 11, 2022) (collecting cases and concluding that the claimant "has not shown any connection between the denial of benefits and the unconstitutional removal provision"). Plaintiff's conclusory assertion that the "government deprived this claimant of a valid administrative adjudicatory process," ECF No. 10, pg. 27, does not establish harm.

///
///
///
///

2.   <u>Federal Vacancies Reform Act</u>

Assuming a FVRA defect regarding the agency officials in this case, Plaintiff's argument is not persuasive.  As the court recognized in <u>Avalon v. Kijakazi</u>, "[t]he overwhelming weight of authority addressing this issue recognizes that the FVRA contains a spring-back provision that made Acting Commissioner Berryhill's appointment valid at the time she appointed the ALJs and Appeals Council Judges." 2022 WL 1746976, at *20-21 (D. Nev. May 27, 2022) (citing various district court decisions); <u>see also</u> <u>Thomas S. v. Comm'r of Soc. Sec.</u>, 2022 WL 268844 (W.D. Wash. Jan. 28, 2022).

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Plaintiff's motion for summary judgment, ECF No. 10, be denied;
2. Defendant's cross-motion for summary judgment, ECF No. 12, be granted; and
3. The Commissioner's final decision be affirmed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  <u>See</u> <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 16, 2023

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

14